UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-200-TBR

ALAN M. YOUNG,                                                    PLAINTIFF

v.

OFFICER GARY HICKS, *et al.*,                                    DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on three motions. First, Defendants, Officer Hicks #420, Sergeant Eastman #425, and the City of Hopkinsville (hereinafter collectively referred to as "City Defendants") Motion for Summary Judgment, [DN 35]. Second, Defendants, Kentucky State Police ("KSP") and Kentucky State Police Trooper Hunter Carroll's Motion for Extension of Time to File, [DN 34]. Finally, Defendants KSP and Trooper Carroll's Motion for Summary Judgment, [DN 37]. Plaintiff has not filed a response to any of Defendants' motions and the time to do so has lapsed. Thus, this matter is ripe for adjudication. For the reasons stated herein, City Defendant's Motion for Summary Judgment, [DN 35], is **GRANTED**, Defendants KSP and Trooper Carroll's Motion for Summary Judgment, [DN 37], is **GRANTED**, and Defendants KSP and Trooper Carroll's Motion for Extension of Time to File, [DN 34], is **DENIED AS MOOT**. The Court will enter an Order and Judgment contemporaneous to this Memorandum Opinion.

**BACKGROUND**

Plaintiff Alan Young, *pro se*, has asserted federal claims for violations of his civil rights under 42 U.S.C. § 1983 and state law claims of negligence and gross negligence against the City of Hopkinsville and two of its police officers, Officer Hicks and Sergeant Eastman, in their individual and official capacities (collectively, "City Defendants"), and against the Kentucky State Police (KSP) and KSP Trooper Hunter Carroll in his individual and official capacity. Now, City Defendants and Defendants KSP and Trooper Carroll move for summary judgment on all claims.

**I.**

In his Complaint, Plaintiff alleges that during his arrest on December 30, 2018, Defendants used excessive force in violation of his constitutional rights, breached their duty of care, and acted with gross negligence towards Plaintiff. [DN 1-1]. Specifically, Plaintiff avers that he was lying unarmed in a boat's storage compartment when Kentucky State Police Trooper Carroll "opened the access door to the boat and found Plaintiff unarmed lying in a surrendering position [ ] on his stomach, face down, [with his] arms out in front of him." [*Id.* at 6]. Trooper Carroll held the door open for K-9 Kuno and his handler, Officer Hicks, to enter. *Id.* Officer Hicks then "ordered K-9 Kuno to attack or apprehend in an aggressive manner while Trooper Carroll and Officer Hicks proceeded to scream and holler at Plaintiff to show his hands." *Id.* Plaintiff then states that Sergeant Eastman was ordered to take part by Officer Hicks and Trooper Carroll, and that Sergeant Eastman placed Plaintiff in handcuffs and transported him to the hospital, rather than calling an ambulance. *Id.* Plaintiff suffered lacerations on his head, hands, arms, and legs which "required emergency medical attention and surgeries." *Id.* Plaintiff requests compensatory damages, as well as punitive damages in the amount of $500,000.00. [*Id.* at 6; DN 33 at 221].

Defendants deny these allegations in their entirety. In support of this assertion, City Defendants have attached Hopkinsville Police Department's Pursuit After Action Reports from December 25, 2018 and December 28, 2018, Hopkinsville Police Department's Use of Force Report from Plaintiff's arrest on December 30, 2018, body camera footage of Plaintiff's arrest on December 30, 2018, and supporting affidavits of Gary Hicks, Edward Eastman, and Deputy Chief of the HPD Michael Seis. [*See* DN 35 Exhibits 2–5; DN 43 Exhibits 1–3]. Defendants Carroll and KSP attached Plaintiff's Parole Violation Warrant, the Use of Force Report from Plaintiff's Arrest on December 30, 2018, a photograph from the arrest, and the supporting affidavit of Detective R. Hunter Carroll. [DN 37 Exhibits 2–4; DN 42-1]. Pursuant to this evidence, Defendants declare that leading up to the incident in question, on December 25, 2018, a Hopkinsville Police Officer observed a white truck with a trailer backed into a closed business parking lot (1490 Glass Ave). [DN 35-2 HPD Pursuit of Action Report for 12/25/18]. The vehicle and trailer drove off shortly thereafter. *Id.* Based on the Officer's observation, he believed it to be a theft in progress or possible burglary. *Id.* Therefore, the Officer attempted to pursue and stop the vehicle, but elected to terminate the pursuit due to excessive high speeds and high risk of danger associated with the pursuit. *Id.* Three days later, on December 28, 2018, Hopkinsville Police officers located the suspect vehicle once more. [DN 35-3 HPD Pursuit of Action Report for 12/28/18]. The Officer made contact with the driver and instructed him to turn off the vehicle. *Id.* The driver ignored this command and proceeded to drive off. *Id.* Officers pursued the driver and attempted to stop him, but the suspect evaded officers again and led them on a dangerous pursuit that was eventually terminated by officers due to high risk of danger to others. *Id.* Subsequently, Officers identified the suspect driver as Plaintiff Alan Young after identifying him by his driver's license photo. *Id.* After looking up Young's information, it was determined that Young was a convicted felon and

had an active parole violation warrant. [*Id*; DN 37-2 Parole Violation Warrant]. A "Be On the Look Out" (BOLO) order was sent out in reference to Alan Young. [DN 35-3].

For the third time in seven days, on December 30, 2018, Hopkinsville Police officers encountered Plaintiff when they received information that he was hiding in a loft storage area of a warehouse. [DN 35-4 Officer Hick's Report]. Based on the presence of Plaintiff's vehicle parked outside of the warehouse and an unidentified informant confirming that Plaintiff was driving the same vehicle that day, the Christian County Attorney's Office advised the HPD officers that probable cause was sufficiently established to enter the storage building. *Id.* In addition to the County Attorney's opinion, City Defendants state that the HPD officers requested and received permission from the storage building's owner to enter the property where officers believed Plaintiff was hiding. *Id.* Officers were provided with an electronic keypad code for entry. *Id.*

Upon opening the door to the warehouse, HPD officers (City Defendants) loudly announced their presence stating, "Hopkinsville Police Department, Canine Team." [DN 35-5 Officer Hicks' Body Camera Footage at 01:02]. After entering through the exterior door into the warehouse, Officer Hicks' body camera footage shows rifle bullets on a table in the entryway and that City Defendants proceeded through the entryway and opened a second door into the main room. [*Id.* at 01:15]. As City Defendants entered the main room, they once again loudly announced their presence stating twice, "Hopkinsville Police Department Canine Team. Make yourself known or you will be dog bit." [*Id.* at 01:17–01:33]. Body camera footage then shows City Defendants, specifically Officer Hicks and K9 Kuno, searching the warehouse for Plaintiff. During the search, Officer Hicks and K9 Kuno reached the back corner of the structure, where a fishing boat was kept, and K9 Kuno was placed in the boat to search the boat's compartments. [*Id.* at 05:15].  K9 Kuno indicated that there may be something of interest in the rear compartment of the boat, so

Officer Hicks proceeded to open the rear compartment hatch and found Plaintiff inside crouched down with his back facing Officer Hicks. [*Id.* at 05:25–05:35]. After opening the hatch, Officer Hicks stated to Plaintiff, "Let me see your hands, let me see your hands! You're going to get dog bit!" [*Id.* at 05:35–05:40]. Officer Hicks then gave K9 Kuno the command to apprehend Plaintiff and he did so, biting Plaintiff in several places. *Id.* HPD Sergeant Eastman quickly approached while K9 Kuno was apprehending Plaintiff and by 06:15 Plaintiff's hands were cuffed above his head and Officer Hicks released K9 Kuno from his grip on Plaintiff's upper arm. [*Id*; DN 35-4 at 304]. Pursuant to the body camera footage, K9 Kuno apprehended Plaintiff for approximately 0:40–0:45 seconds before Officer Hicks released K9 Kuno once Plaintiff's hands were secured by handcuffs. [*Id.* 05:35–06:15]. City Defendants then escorted Plaintiff out of the warehouse and quickly searched him before taking him to the Emergency Department at Jennie Stuart Medical Center in the back seat of City Defendant's police vehicle so that his dog bite wounds could be tended to.

Despite Plaintiff's allegation that he was "unarmed lying in a surrendering position. On his stomach, face down arms out in from of him in plain sight" when officers found him inside of the boat, [DN 1-1 at 6], Defendants aver that when they found Plaintiff, he was lying "face down in a crouched position where his hands were not visible, [which] prevent[ed] the arresting officers from determining if he was armed with a gun or other lethal weapon." [DN 35-1 at 256]. The body camera footage does not provide a clear view of the position of Plaintiff's hands or arms when he was discovered inside the boat. In City Defendant's supporting affidavits, Hicks declares that he was present when Plaintiff Alan Young was arrested on December 30, 2018 and that he was the handler of K9 Kuno. [DN 43-1]. Hicks states that "the Canine was used to effectuate the arrest of Alan Young because of the risks and dangers associated with entering an unknown building with

a presume armed and dangerous convicted felon hiding inside." *Id.* Hicks further declares that "the body camera footage is from my body-worn camera on December 30, 2018" and that "the video footage depicts the entirety of the events on December 30, 2018 involving Alan Young, to the extent the same can be captured by my video camera." *Id.* Lastly, Hicks declares that he reviewed the HPD Use of Force Report prepared by him on December 30, 2018, that is attached to City Defendants' Motion for Summary Judgment as Exhibit C. *Id.* Hicks attests that this report "is a truthful, accurate, and exact copy of the information prepared by me in the days and weeks prior to and after the December 30, 2018 incident involving Alan Young. The report also contains information prepared by others which was relied upon by me in the arrest of Alan Young. The information presented to the Court is a truthful and accurate copy of what was relied upon by me." *Id.* Similarly, Eastman declared in his affidavit that he was present when Plaintiff Alan Young was arrested on December 30, 2018, and that the "footage accurately represents the entirety of the events on December 30, 2018, involving Alan Young." [DN 43-2]. Additionally, Eastman declares that "Alan Young was responsive, not complaining of serious injury, and his physical condition remained stable after the accident. Alan Young was transported to the emergency room as soon as was practicable." *Id.*

Plaintiff further alleges that Trooper Carroll opened the hatch to find Plaintiff, he was present during the apprehension, he held the access door open for K9 Kuno to attack, and screamed at Plaintiff to show his hands while he was being attacked by the canine. [DN 1-1 at 6]. Contrary to Plaintiff's assertion, Defendant Carroll declares that he was not in the building at the time Plaintiff was located, he did not find Plaintiff hiding in the boat, and to the best of his memory, he only assisted in handcuffing Plaintiff and escorting him out of the building. [DN 42-1 Affidavit of Detective Hunter R. Carroll].

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Althers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52). The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

Additionally, the Court acknowledges that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). The duty to be less stringent with *pro se* complainants, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation

omitted), not to create a claim for a *pro se* plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

## DISCUSSION

Having moved for summary judgment, Defendants bear the burden of demonstrating an absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may disagree on the factual predicates of this case, "not every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Where Defendants move for judgment on immunity grounds, the Court will resolve all ambiguities and draw all reasonable inferences in favor of Plaintiff. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Qualified immunity is a defense only to individual capacity claims." *Daugherty v. Louisville-Jefferson Cty. Metro Gov't*, 495 F. Supp. 3d 513, 521 (W.D. Ky. 2020) (quoting *Meogrossi v. Aubrey*, No. 3:09CV-00301-JDM, 2011 WL 1235063, at *6 (W.D. Ky. Mar. 31, 2011)). On the other hand, when defendants are "specifically sued 'in their official capacities' . . . each is cloaked with the same immunity as the government or agency he/she represents." *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). *See also Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008) ("Official immunity protects governmental officials or employees from tort liability for performance of their discretionary functions . . . Furthermore, official immunity is absolute when an official's or an employee's actions are subject to suit in his official capacity.").

Immunity standards are different under Kentucky and federal laws. The Court must apply Kentucky law to determine whether Defendants are entitled to immunity from state tort liability

and apply federal law when assessing immunity for federal law claims. *See Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2007 WL 101862, at *4 (E.D.Ky. Jan. 10, 2007) ("[T]here is widespread agreement that state rules of sovereign immunity govern in federal court on issues related to alleged violations of state law."); *see e.g., King v. Taylor*, 694 F.3d 650, 662–64 (6th Cir. 2012) (applying federal law on qualified immunity to plaintiff's § 1983 claims and Kentucky law on qualified immunity to plaintiff's negligence claim). Thus, the Court will address the substance of each motion for summary judgment in two parts, first as to the federal law claims and second as to the state law claims.

## I. Federal Claims

### A. § 1983 Excessive Force – Individual Capacity Claims

To hold individuals liable in their individual capacities under § 1983, a plaintiff must show that each defendant was personally involved in the alleged constitutional deprivations. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citations omitted). "This court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted).

With respect to Plaintiff's individual-capacity claims under §1983, City Defendants (Officer Hicks and Sergeant Eastman) and Defendant KSP Trooper Carroll assert qualified immunity. [DN 35-1 at 263]. Qualified immunity "protects government officials 'from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, the Court engages in a two-step inquiry, asking whether the plaintiff has presented facts demonstrating a violation of a constitutional right and "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Either step may be addressed first. *Id.* at 236; *see also Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). When evaluating the defense of qualified immunity on a motion for summary judgment, the court must adopt the plaintiff's version of the facts. *Campbell*, 700 F.3d at 786 (citing *Parsons*, 533 F.3d 492, 500). If, based upon these facts, no constitutional right was violated, there is no need for further inquiry. *Id.* Here, the Court concludes that Plaintiff failed to show that either City Defendants or KSP Trooper Carroll violated any constitutional right. As such, each Defendant is entitled to qualified immunity on Plaintiff's claims brought under § 1983.

Claims that police officers used excessive force in the course of an arrest are analyzed under the Fourth Amendment and the "objective reasonableness standard." *Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Thus, even though Plaintiff claims that Defendants violated his constitutional rights including the ". . . *Eighth Amendment* and the right to be free from cruel and unusual punishment[ ] [a]lso the use of excessive force," (emphasis added) [DN 1-1 at 5], Plaintiff was a free person at the time of the incident at issue and the use of force in question occurred in the course of Plaintiff's arrest. Accordingly, although never specifically identified as such in

Plaintiff's *pro se* Complaint, the Court shall construe Plaintiff's § 1983 claims as if they were brought under the Fourth Amendment to the United States Constitution.

In his Complaint, Plaintiff alleges that he "was found by Trooper Carroll #268 with the Kentucky State Police. Trooper Carroll #268 opened the access storage door to the boat and found Plaintiff unarmed lying in a surrendering position. On his stomach, face down arms out in from of him in plain sight and continued to hold the access door open for K9 Kuno and his handler." [DN 1-1 at 6]. Plaintiff asserts that "[he] was excessively attacked by the Hopkinsville Police Department canine officer, K9-Kuno as he was being handled and ordered to attack in an aggressive manner by Hopkinsville Police Officer Hicks #420. This attack by K9-Kuno was ordered by Officer Hicks #420 resulted in multiple injuries to Plaintiff's body [ ] includ[ing] lacerations to his head, hands [ ], upper arm and inter arm pit area." [DN 1-1 at 6]. Plaintiff further states that "Sgt. Eastman #425 was ordered to take part in this by Officer Hicks #420 and Trooper Carroll #268. Officer Eastman did cuff Plaintiff up and transport him to the hospital instead of calling EMS, ambulance after being severely attacked by K9-Kuno and going through so much traumatic trauma." *Id.*

There is no dispute as to whether Plaintiff was "seized" for purposes of triggering the Fourth Amendment's protections. Accordingly, the Court will proceed to determine whether the force used was unreasonable under the Fourth Amendment. In making this determination, courts employ an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 391 (1989). "Relevant factors to consider in evaluating what level of force is reasonable include the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (alteration in original) (quoting

*Graham*, 490 U.S. at 396). Still, the Sixth Circuit advises that "[t]hese factors are not an exhaustive list, and the ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006)). Additionally, the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene rather than with the benefit of hindsight. *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 95 (6th Cir. 2012) (citing *Graham*, 490 U.S. at 396). This means that courts must take into account "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 397). "Ultimately, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 397).

The Sixth Circuit has demarcated the outer bounds of excessive force cases involving canine seizure. In *Campbell v. City of Springboro*, the court held that officers cannot "use[ ] an inadequately trained canine, without warning, to apprehend two suspects who were not fleeing." 700 F.3d 779, 798 (6th Cir. 2012). Conversely, in *Robinette v. Barnes*, the court upheld the use of a well-trained canine to apprehend a fleeing suspect in a dark and unfamiliar location. 854 F.2d 909, 913–14 (6th Cir. 1988). With facts more akin to the instant case, in *Baxter v. Bracey*, the suspect plaintiff claimed he surrendered by raising his hands in the air before the officer released his dog. 751 F. App'x 869, 872 (6th Cir. 2018). Yet, the court in *Baxter* held that the officer was entitled to qualified immunity because the officer's use of the canine to apprehend the suspect did not violate clearly established law. *Id.* at 871. The court explained that "even with Baxter's hands

raised, Harris faced a suspect hiding in an unfamiliar location after fleeing from the police who posed an unknown safety risk. . . ." *Id.* Moreover, the court found that the suspect plaintiff ignored multiple warnings that a canine would be released, choosing to remain silent as he hid, and the canine was properly trained with no apparent history of bad behavior. *Id.* Thus, "[a]ll of these facts would lead a reasonable officer to believe that the use of a canine to apprehend Baxter did not violate the Fourth Amendment." *Id.*

### i. City Defendants – Officer Hicks and Sergeant Eastman

In this case, the factors from *Graham* weigh in favor of granting qualified immunity to City Defendants, Officer Hicks and Sergeant Eastman. Here, Plaintiff claims that when Officers found him, he was lying in a surrendering position with his hands above his head before Officer Hicks released the dog. It is true that this conduct might show that Plaintiff did not pose the kind of safety threat justifying a forceful arrest. *See, e.g.*, *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006). However, Plaintiff does not cite any case law suggesting that raising his hands, on its own, is enough to put Officer Hicks on notice that a canine apprehension was unlawful in these circumstances. This is because even with Plaintiff's hands raised, Hicks faced a suspect who posed an unknown safety risk and who was hiding in an unfamiliar location after fleeing from the police in a vehicle on two separate occasions and evading arrest for seven days. Hicks and the other officers were also aware that at the time of this incident, Plaintiff was a convicted felon with an active warrant for a parole violation and Plaintiff was listed as armed and dangerous. [DN 35-4 at 298–99, 304]. Additionally, evidence shows that when police officers entered the warehouse, Hicks warned Plaintiff twice stating loudly, "Hopkinsville Police Department Canine Team. Make yourself known or you will be dog bit." [DN 35-5 Hick's Body Camera Footage at 01:17–01:33]. When K9 Kuno located Plaintiff inside the hatch on the boat, Officer Hicks opened the hatch,

revealing Plaintiff crouched down hiding inside with his back facing Officer Hicks. *Id.* Hicks shouted, "stop moving, let me see your hands," and gave K9 Kuno the command to apprehend Plaintiff. [*Id.* at 05:35]. Despite multiple warnings, Plaintiff never communicated with the officers before being apprehended. Pursuant to the body camera footage, K9 Kuno apprehended Plaintiff for approximately 0:40–0:45 seconds before Officer Hicks released K9 Kuno once Plaintiff's hands were secured. [*Id.* 05:35–06:15]. Once Plaintiff was secured, Officer Hicks asked him "You heard my announcements, right?" and Plaintiff responded "No." [*Id.* 06:25]. Officer Hicks then asks Plaintiff, "Why didn't you come out when I was calling for you?" Plaintiff said, "because I didn't hear you" then Hicks responded, "You heard me" and Plaintiff admitted, "I heard you holler." [*Id.* 07:16].

Officer Hicks swore to the accuracy of these events in his affidavit.[1] [*See* DN 43-1]. Plaintiff has failed to present facts to suggest that Officer Hick's use of a canine officer to apprehend Plaintiff was objectively unreasonable. Plaintiff also failed to present facts suggesting that Sergeant Eastman acted unreasonably by assisting in handcuffing Plaintiff after he was apprehended by the canine. Considering the evidence and supporting affidavits put forth by City Defendants and the unsupported assertions of Plaintiff, and viewing this evidence in the light most favorable to the Plaintiff, the Court finds that Defendants' actions while apprehending Plaintiff were objectively reasonable under the circumstances. The events leading up to and during the events in question would lead a reasonable officer to believe that the use of a canine to apprehend

---

[1] In their affidavits, both Hicks and Eastman declared that "[t]he canine was used to effectuate the arrest of Alan Young because of the risks and dangers associated with entering an unknown building with a presumed armed and dangerous convicted felon hiding inside." [DN 43-1; 43-2]. Hicks and Eastman further declared "I, in consultation with other officers at the Hopkinsville Police Department, used the least amount of force necessary, in my professional judgment at the time of the incident, in order to safely effectuate the arrest of Alan Young." [ND 43-1; 43-2].

Plaintiff and then placing him in handcuffs did not violate Plaintiff's Fourth Amendment right to be free from an unreasonable use of force during an arrest.

Accordingly, the Court finds that no genuine issue of material fact exists as to whether Officer Hicks or Sergeant Eastman's actions during Plaintiff's arrest, considering the totality of the circumstances, were objectively reasonable. Because neither Officer Hicks's nor Sergeant Eastman's actions constituted excessive force, they are both entitled to qualified immunity on these claims. Therefore, Plaintiff's § 1983 excessive force claims against Officer Hicks and Sergeant Eastman in their individual capacities will be dismissed and summary judgment GRANTED to City Defendants on these claims.

### ii. KSP Trooper Carroll

The Court also finds that the evidence presented contradicts Plaintiff's factual allegations against KSP Trooper Carroll, but regardless, Trooper Carroll is entitled to qualified immunity because there is no genuine dispute of material fact as to whether Trooper Carroll's actions were objectively reasonable. In his Complaint, Plaintiff alleges that Trooper Carroll opened the hatch and "found Plaintiff unarmed lying in a surrendering position." [DN 1-1 at 6]. Plaintiff further alleges that Trooper Carroll held the hatch open for Officer Hicks when Hicks "ordered K9 Kuno to attack or apprehend in an aggressive manner while Trooper Carroll and Officer Hicks proceeded to scream and holler at Plaintiff to show his hands all while he was being attacked by K9 Kuno." *Id.* Plaintiff failed to present any affirmative evidence supporting his factual allegations against Trooper Carroll.

Contrary to Plaintiff's assertions, Defendant Carroll declares that he was not in the building at the time Plaintiff was located. [DN 42-1]. Instead, Carroll attests that "[w]hen the Plaintiff was

located, I was outside the back door of the building, between the building and the Plaintiff's truck, in case he tried to run out the back and get to the truck." [DN 42-1 at 364]. Carroll declares that "[a]s body camera video and report filed by the Hopkinsville Police Department Defendants show, I did not find the Plaintiff hiding on the boat where Hopkinsville Police Officers arrested him. I did not open or hold the door to the storage compartment where he was hiding, and I was not present on the boat when the Plaintiff was located." *Id.* Carroll further declares that "I did not order anyone to handcuff the Plaintiff. When I arrived at the boat where the Plaintiff was hiding, I ordered him to show his hands, which he placed over the side of the boat, and I placed handcuffs on him and helped him down from the boat." [*Id.* at 365]. "To the best of my memory, I walked the Plaintiff out of the building and then Hopkinsville officers took over to search him and transport him to jail." *Id.*

The Court has reviewed the body camera footage of Plaintiff's arrest as well as all other evidence submitted by the parties. Upon review of this evidence, the Court acknowledges that the body camera footage does not show Trooper Carroll in the area around the boat at the time Plaintiff was found. However, the Court also recognizes there is a possibility that Trooper Carroll was there as Plaintiff alleges and the video merely failed to show him. Regardless, even taking Plaintiff's factual allegations against Trooper Carroll as true, this evidence is insufficient to deprive Trooper Carroll of qualified immunity. At most, all Trooper Carroll did was lift the hatch to reveal Plaintiff hiding inside, hold the hatch open while Officer Hicks ordered K9 Kuno to apprehend Plaintiff, handcuff Plaintiff, and escort him off the boat and out of the building. None of which constitute unreasonable or excessive force. To the extent Trooper Carroll utilized any force against Plaintiff by placing him in handcuffs, helping him off the boat, and walking him outside, this use of force was objectively reasonable.

Accordingly, viewing this evidence in the light most favorable to the Plaintiff, the Court finds that no genuine issue of material fact exists as to whether KSP Trooper Carroll's actions during Plaintiff's arrest, in light of the totality of the circumstances, were objectively reasonable. Because Trooper Carroll's actions did not constitute excessive force, he is entitled to qualified immunity on this claim. Therefore, Plaintiff's § 1983 excessive force claim against Trooper Carroll in his individual capacity will be dismissed and summary judgment GRANTED to Defendant Carroll on this claim.

### B. Deliberate Indifference – Individual Capacity Claims

Plaintiff's *pro se* Complaint also includes the allegation that "all defendants have acted together in a deliberate indifferent and negligent manner in which Plaintiff Alan Young has suffered physical and mental harm which resulted in life long injuries[] d[ue] to all defendants' actions." [DN 1-1 at 5]. Though Plaintiff's factual and legal assertions are sparse, in an effort to be as thorough as possible, the Court has construed this as a Fourteenth Amendment claim alleging Defendants acted with deliberate indifference to Plaintiff's serious medical needs. Ultimately, the Court concludes that neither Officer Hicks, Sergeant Eastman, nor KSP Trooper Carroll were deliberately indifferent to Plaintiff's serious medical needs. As such, each Defendant, Hicks, Eastman, and Carroll, are entitled to qualified immunity on this claim.

The Fourteenth Amendment requires adequate medical care for persons "injured while being apprehended by the police." *Hicks v. Scott*, 958 F.3d 421, 438 (6th Cir. 2020) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). An injured suspect, however, is only entitled to relief if a government official acts with "deliberate indifference to [his] serious medical needs." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference is not mere negligence. It requires that the defendant knew of and disregarded a substantial risk of serious

harm to plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). The deliberate indifference standard contains both an objective and subjective component. *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008). First, under the objective component, a suspect must show a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An injury "so obvious that even a layperson would easily recognize the necessity for a doctor's attention" satisfies the seriousness requirement because such an injury presumptively gives rise to "a substantial risk of serious harm." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). Second, under the subjective component, a suspect must show that (1) an official was aware of facts from which he could have inferred a substantial risk of serious harm to the suspect, (2) he in fact drew such an inference, and (3) he nevertheless disregarded the known risk. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

As previously mentioned, to hold individuals liable in their individual capacities under § 1983, a plaintiff must show that each defendant was personally involved in the alleged constitutional deprivations because one can be held liable based only on their own unconstitutional behavior. *See Graham*, 473 U.S. at 166; *Heyerman*, 680 F.3d at 647. To succeed, Plaintiff must allege, *with particularity*, facts showing what each defendant did to violate Plaintiff's asserted constitutional right. *See Lanman*, 529 F.3d at 684 (emphasis added). Here, for the reasons stated herein, the Court finds that Plaintiff has failed to sustain this burden.

In a subsequent *pro se* filing, entitled "Pretrial Memorandum," Plaintiff asserts the following facts regarding this claim. First, Plaintiff states that after he was handcuffed by Sergeant Eastman, he was standing with visible serious injuries including: "lacerations to his head, hands, left upper arm and under arm area, calves and back of legs" and that "[n]o medical intervention was offered at this time nor was it discussed as the group of officers stood discussing the arrest."

[DN 33 at 220]. Next, Plaintiff states he was searched while he was standing next to the police vehicles outside, and "[n]o officers present at this time were concerned with Young's condition even though he was visibly in need of emergency medical attention." *Id.* Plaintiff alleges "[m]edical attention was mentioned for the first time by Hicks after seven minutes has elapsed after the attack. (Body Camera Footage 11:50:26).[2]" *Id.* "Young was then transported for emergency medical attention to the emergency room." *Id.* In his Complaint, Plaintiff alleges that "Sgt. Eastman #425 was ordered to take part in this by Officer Hicks #420 and Trooper Carroll #268. Officer Eastman did cuff Plaintiff up and transport him to the hospital instead of calling EMS, ambulance after being severely attacked by K9 Kuno and going through so much traumatic trauma." [DN 1-1 at 6].

### i. City Defendants – Officer Hicks and Sergeant Eastman

In response, to Plaintiff's allegations, City Defendant's argue that "Plaintiff's demeanor and calmness (Body Camera Footage, Exhibit D) at the time of the arrest corroborate City Defendant's position that the bite wounds were superficial and thus did not pose a "substantial risk of serious harm." [DN 35-1 at 258]. Defendants further argue that even if Plaintiff can show there was a "sufficiently serious" medical need from his bite wounds, "City Defendants did not disregard the known risk. City Defendants instead transported Plaintiff to the Emergency Room within 15 minutes of the dog bite." [*Id.* at 259 (citing Body Camera Footage, Exhibit D)]. Additionally, in Officer Hicks's affidavit, he declares that "Alan Young was responsive, not complaining of serious injury, and he appeared stable immediately after the accident. I transported Alan Young to the emergency room as soon as reasonably practical in my professional judgment given the

---

[2] The Court notes that this is the time stamp cited by Plaintiff in his memorandum. It refers to Officer Hicks's body camera footage from Plaintiff's arrest on December 30, 2018.

circumstances."[3] [DN 43-1 at 369]. Body camera footage shows that while Plaintiff is being searched, Officer Hicks asks him where the dog bit him. [DN 35-5 at 09:55]. Officer Hicks then responds to his police radio stating that once Plaintiff is searched, they will take him to the emergency room for "dog apprehension." [*Id.* at 10:29]. It should be noted that Plaintiff was apprehended by the canine beginning at 05:35 and ending at 06:15 when Plaintiff was placed in handcuffs. Officers took note of his injuries approximately three minutes and forty-five seconds later at 09:55. Body camera footage ends at 12:52, approximately six minutes and forty seconds after Plaintiff was injured by the canine officer. *Id.* Plaintiff was then transported to the hospital for medical treatment. [DN 33 at 220; 43-1,2].

Here, the evidence, even when viewed in the light most favorable to Plaintiff, does not establish a genuine dispute of material fact with respect to deliberate indifference on the part of Officer Hicks or Sergeant Eastman. As noted above, a defendant is deliberately indifferent where it can be shown that he was aware of facts from which he could have inferred a substantial risk of serious harm to the suspect, he in fact drew such an inference, and he nevertheless disregarded the known risk. *Comstock*, 273 F.3d at 703. The Sixth Circuit has repeatedly held that "[w]hen police injure a person while apprehending him, they generally satisfy the Fourteenth Amendment by summoning medical care and not intentionally or recklessly delaying his access to it." *Hicks,* 958 F.3d at 439 (quoting *Wilkerson v. City of Akron*, 906 F.3d 477, 483 (6th Cir. 2018) (citation omitted)). Even if the first objective component is satisfied because Hicks and Eastman were aware that Plaintiff's dog bite wounds posed a substantial risk of serious harm, Hicks and Eastman reasonably responded to the substantial risk to Plaintiff's health by ensuring he was quickly

---

[3] Sergeant Eastman swore to the same in his affidavit, stating "Alan Young was responsive, not complaining of serious injury, and his physical condition remained stable after the accident. Alan Young was transported to the emergency room as soon as was practicable." [DN 43-2 at 370].

transported to the hospital, and were not, therefore, deliberately indifferent to Plaintiff's serious medical needs. Accordingly, the Court finds that both Officer Hicks and Sergeant Eastman are entitled to qualified immunity on Plaintiff's deliberate indifference claims against them. As such, Plaintiff's deliberate indifference claims against Officer Hicks and Sergeant Eastman in their individual capacities will be dismissed and summary judgment shall be GRANTED to City Defendants.

### ii. KSP Trooper Carroll

In response to Plaintiff's blanket accusation that "all defendants have acted together in a deliberate indifferent and negligent manner in which Plaintiff Alan Young has suffered physical and mental harm which resulted in life long injuries[] d[ue] to all defendants' actions," [DN 1-1 at 5], Defendant Trooper Carroll argues that his limited involvement refutes Plaintiff's allegations and evidence demonstrates that there was not a breach, a failure to exercise reasonable care, or a wanton or reckless disregard. [DN 37 at 324]. Carroll further argues that "no reasonable jury could conclude that Trooper Carroll's actions were not 'rationally related to a legitimate nonpunitive governmental purpose' or that his actions 'appear excessive in relation to that purpose.'" [*Id.* at 322] (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397–99 (2015)).

As previously stated, deliberate indifference requires that the defendant knew of and disregarded a substantial risk of serious harm to plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 835–37 (1994). More importantly, to hold Trooper Carroll liable in his individual capacity under § 1983, Plaintiff must allege, *with particularity*, facts demonstrating what Trooper Carroll did to violate Plaintiff's asserted constitutional right. *See Kentucky*, 473 U.S. at 166; *Heyerman*, 680 F.3d at 647; *Lanman*, 529 F.3d at 684. Plaintiff has failed to allege such facts in this case. It is undisputed that Trooper Carroll was at the scene and interacted with Plaintiff.

However, as previously noted, there is a dispute regarding the extent of Trooper Carroll's involvement in Plaintiff's apprehension and arrest. Plaintiff has not submitted any evidence showing that Trooper Carroll ever subjectively perceived Plaintiff had dog bite wounds and needed medical attention, and body camera footage does not clearly show Plaintiff's injuries or whether Trooper Carroll was present during the times Plaintiff alleges he was. Regardless, even taking Plaintiff's allegations against Trooper Carroll as true, this evidence is insufficient to deprive Trooper Carroll of qualified immunity. At most, Trooper Carroll's actions were limited to locating Plaintiff in the boat, assisting in the canine apprehension by holding the hatch door open for Officer Hicks, handcuffing Plaintiff, and escorting him from the building to be searched and transported to the hospital by HPD officers. None of which amount to deliberate indifference.

Accordingly, after viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to allege facts sufficient to establish any genuine dispute of material fact as to whether Trooper Carroll's actions during Plaintiff's arrest constituted deliberate indifference. With nothing in the record to support a conclusion that Trooper Carroll was deliberately indifferent to Plaintiff's serious medical condition, the Court finds that Trooper Carroll is entitled to qualified immunity on this claim. As such, Plaintiff's deliberate indifference claim against Trooper Carroll in his individual capacity will be dismissed and summary judgment shall be GRANTED to Defendant Carroll.

## C. Federal § 1983 Claims – Official Capacity

### i. City Defendants - *Monell*

An official capacity suit will be construed as a suit directly against the local governmental entity. Here, because City Defendants are employees of the Hopkinsville Police Department, a division of the city government, this Court determined that Plaintiff's claims against the

department are actually brought against the City of Hopkinsville. [DN 17 at 3]. Thus, Plaintiff's official capacity claims against City Defendants are construed as claims against the City of Hopkinsville. City Defendants argue that Plaintiff failed to assert an unconstitutional custom, policy, or practice attributable to City Defendants, therefore, Plaintiff's claims are barred pursuant to *Monell*, [DN 35-1 at 261]. The Court agrees.

To assert a § 1983 claim against a defendant such as the City of Hopkinsville, the Court must determine: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the city is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Assuming Plaintiff could prove that any of the Defendants violated his constitutional rights, in order to recover against the City of Hopkinsville, Plaintiff would be required to prove that the actions or inactions of Defendants were done pursuant to a "policy or custom" attributable to the City of Hopkinsville and that this policy or custom was the "moving force" behind the deprivation of rights. *Miller v. Sanical County*, 606 F.3d 240, 254–55 (6th Cir. 2010) (citing *Monell v. New York Depart. Social Services*, 436 U.S. 658, 694 (1978)). A "custom" for purposes of *Monell* liability must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691–92. Essentially, a "custom" is a "legal institution" not memorialized by written law. *See Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1995).

The policy or custom must play a part in the violation of federal law—a causal connection is required. Considerably more proof than a single incident is necessary to establish both the requisite fault on the part of the municipality, and the casual connection between the policy and the constitutional deprivation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). In this case, Plaintiff has pled only a single incident and has not put forth any evidence of an unconstitutional

custom, policy, or practice. Moreover, a municipal liability claim under *Monell* requires a plaintiff to first establish that a constitutional violation occurred. *Bowman v. Corr. Corp. of Am.,* 350 F.3d 537, 545 (6th Cir. 2003) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")). Plaintiff failed to do so and, accordingly, his *Monell* claim fails. Therefore, the official capacity federal claims against the City of Hopkinsville and Officer Hicks and Sergeant Eastman will be dismissed and summary judgment GRANTED to City Defendants on those claims.

### ii. KSP Trooper Carroll and the Kentucky State Police – Sovereign Immunity

Plaintiff also seeks a judgment for monetary damages against KSP Trooper Carroll in his official capacity and against the Kentucky State Police. [*See* DN 1-1]. In their motion for summary judgment, Defendant Carroll and the Kentucky State Police ("KSP") argue that "[w]hile Plaintiff has failed to serve the Kentucky State Police, the Eleventh Amendment to the U.S. Constitution and the State's sovereign immunity deprives the Court of subject matter jurisdiction over 42 U.S.C. § 1983 claims against the Kentucky State Police and any official capacity claims against Trooper Carroll for money damages and supplemental state-law claims against the Kentucky State Police for money damages." [DN 37 at 327]. Defendant's also state that "an official capacity suit against a Kentucky State Police Trooper is a suit against the state and is likewise barred." *Id.*

Suing KSP Trooper Carroll in his official capacity is another way of pleading suit against the Department of Kentucky State Police of which Defendant Carroll is an employee. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because the KSP is an arm of the executive branch of the Commonwealth of Kentucky, a suit against Trooper Carroll, a state officer, in his official capacity

or against the KSP is tantamount to a suit against the Commonwealth of Kentucky itself. *See Scott v. Michigan*, 173 F. Supp. 2d 708, 713 (E.D. Mich. 2001).

The Eleventh Amendment bars all suits, whether for injunctive, declaratory or monetary relief, against the state, its departments, and agencies of the state. *Sefa v. Kentucky*, 510 F. App'x 435, 437 (6th Cir. 2013) (quoting *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div*., 987 F.2d 376, 381 (6th Cir. 1993)); *see also Dubuc v. Michigan Bd. of Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003). "The sovereign immunity guaranteed by this Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). Relatedly, the Amendment bars "claims brought against state employees in their official capacity because 'a suit against a state officer in his or her official capacity is tantamount to a suit against the state itself.'" *Scott v. Michigan*, 173 F. Supp. 2d 708, 713 (E.D. Mich. 2001) (internal quotation marks and citations omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100 (citing *Missouri v. Fiske*, 290 U.S. 18, 27 (1933)).

Here, there is no genuine dispute of material fact regarding the Eleventh Amendment inquiry. Plaintiff has alleged that Defendant KSP Trooper Carroll was employed as a KSP Trooper on December 30, 2018 and was acting in that capacity at the time of Plaintiff's arrest. [*See* DN 1-1]. Further, there is no dispute that the KSP is an arm of the executive branch of the Commonwealth of Kentucky. *See* Ky. Rev. Stat. §§ 12.020 Sec. II(1)(a) and 16.060. Because Kentucky has not waived its Eleventh Amendment immunity and Congress has not abrogated state sovereign immunity under § 1983, the KSP is not amenable to damage claims arising from alleged violations

of federal civil rights. *See Sefa*, 510 F. App'x at 437. And as outlined above, Defendant Trooper Carroll, when sued in his official capacity for monetary damages under § 1983, cannot be held liable for such damages. Regardless of his factual assertions, Plaintiff has failed to offer any authority or affirmative evidence to alter this result. Accordingly, the Court finds there is no genuine dispute of material fact as to whether Defendants KSP Trooper Carroll and the KSP are entitled to immunity from suit under the Eleventh Amendment. Therefore, Plaintiff's federal claims against Trooper Carroll in his official capacity and against the KSP are barred by the Eleventh Amendment, and Defendants are entitled to summary judgment on these claims.

## II. State-Law Claims

### A. Individual Capacity

Plaintiff brings state law claims of negligence and gross negligence against City Defendants Officer Hicks and Sergeant Eastman in their ***individual capacities*** and against KSP Trooper Carroll in his ***individual capacity***. Defendants have moved for summary judgment on these claims as well, arguing both that they are entitled to qualified official immunity, and that these claims fail on the merits. [DN 35-1 at 260, 267; DN 37 at 324, 326]. As previously mentioned, for Plaintiff's state law claims, Kentucky law and Kentucky's qualified immunity standard govern. *Crawford v. Lexington-Fayette Urban County Gov't*., 2007 WL 101862, at *3 (E.D. Ky. Jan. 10, 2007). "When sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." 63C Am.Jur.2d, Public Officers and Employees, § 309 (1997). Thus, Kentucky's qualified immunity standard will apply to bar the state claims against HPD Officer Hicks, HPD Sergeant Eastman, and KSP Trooper Carroll in their individual capacities if, as public officers, they were (1) performing a discretionary function, (2)

in good faith, and (3) within the scope of their authority as police officers. *See Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Discretionary acts are those which "necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued." *Burnette v. Gee*, 137 F. App'x 806, 812 (6th Cir.2005) (quoting *Upchurch v. Clinton Coun*ty, 330 S.W.2d 428, 430 (Ky.Ct.App.1959)). Bad faith can be demonstrated by objective unreasonableness or by a subjective intention to harm (i.e., a "corrupt motive"). *Williams v. Sandel*, 433 F. App'x 353, 363 (6th Cir.2011) (citing *Yanero*, 65 S.W.3d at 522) (internal citations omitted). "Thus, if the discretionary act is taken in bad faith, qualified immunity does not apply. Bad faith is '[t]he opposite of good faith, and it is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.'" *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 483 (Ky. 2006). As with federal qualified immunity, it is Plaintiff's burden to establish that the officers' actions were not performed in good faith. *Sandel*, 433 F. App'x at 363.

In his Complaint, Plaintiff asserts that "all named defendants have acted together in a deliberate indifferent and negligent manner in which Plaintiff Alan Young has suffered physical and mental harm which resulted in life long injuries[] d[ue] to all defendants' actions." [DN 1-1 at 5]. From the allegations in Plaintiff's Complaint, the Court believes that Plaintiff's negligence and gross negligence claims are based on Defendants' alleged deliberate indifference to Plaintiff's serious medical needs. [*Id.* at 5–6].[4]

---

[4] The Court notes that it did not used Plaintiff's excessive force claim as a basis to analyze his negligence/gross negligence claims because a police officer's alleged use of excessive force cannot be analyzed as a negligence claim. This is because the use of excessive force by a police officer constitutes the intentional tort of battery and an officer is liable for battery, not for negligence, when he deliberately exceeds the privileged amount of force by committing an unwarranted violence on the arrestee. *See Ali v. City of Louisville*, No. 3:03CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006) (citing *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky.1973)); *see also Woodcock v. City of Bowling Green, Kentucky*, 165 F.Supp.3d 563, 605–06 (W.D. Ky. 2016).

### i. City Defendants – Officer Hicks and Sergeant Eastman

Here, the factual assertions in Plaintiff's Complaint are sparse, and the Court finds that City Defendants have presented sufficient evidence showing that they were performing a discretionary act or function within the scope of their authority and in good faith. For example, even assuming that Officer Hicks or Sergeant Eastman did act in a "negligent manner" by using the canine to apprehend Plaintiff and then transporting him to the hospital themselves instead of calling an ambulance as Plaintiff has alleged, the evidence shows that using a trained police canine to apprehend Plaintiff in a reasonable manner was in the scope of Officer Hicks's authority and he acted in good faith on the basis of his discretion. [DN 43-1, 2, 3]. Moreover, Officer Hicks and Sergeant Eastman used their discretion, acted in good faith, and acted in their scope of authority in transporting Plaintiff to the emergency room. *Id.* Since City Defendants have shown that their actions were performed within the scope of their discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary acts were not performed in good faith. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991), as modified by, *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146 (6th Cir.1995). The Court finds that Plaintiff has failed to meet this burden.

As mentioned, according to Kentucky law, bad faith can be either objective, insofar as the official "knew or reasonably should have known that the action he took . . . would violate the constitutional rights of the plaintiff," or subjective, insofar as the official "took action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Yanero*, 65 S.W.3d at 523 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)) (emphasis omitted). Thus,

in effect, this inquiry tracks the analysis for objective reasonableness and qualified immunity discussed *supra* in Part I. This Court has already determined that City Defendant's actions—specifically Officer Hicks' handling of Canine Kuno and subsequent treatment of Plaintiff's injuries—did not constitute deliberate indifference, and accordingly, cannot be objectively unreasonable. For the same reasons set forth above relative to Plaintiff's § 1983 excessive force and deliberate indifference claims, the Court finds that Plaintiff has failed to show that City Defendants violated one of Plaintiff's clearly established rights. Therefore, Plaintiff's claim can only survive if he can establish bad faith by showing that "the officer [ ] willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.*

Plaintiff does not explicitly accuse Defendants of acting in "bad faith" in his Complaint. [*See* DN 1-1]. Instead, Plaintiff makes statements that he was "excessively attacked" by K9 Kuno at the direction Officer Hicks, that he sustained multiple injuries, and that Sergeant Eastman transported him to the hospital instead of calling an ambulance. *Id.* As mentioned, the Court has already found that Defendants acted reasonably, and Plaintiff has failed to provide any evidence beyond the allegations in his Complaint to support his state-law claims. Such unsupported accusations are not enough to establish any genuine dispute of material fact as to whether Defendants acted in bad faith.

Without having demonstrated the violation of an established right which a person in Defendants' position "presumptively would have known was afforded to a person in the plaintiff's position" or showing that "the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive," Plaintiff cannot overcome the qualified official immunity defense. *Yanero*, 65 S.W.3d at 523. Consequently, the Court finds that City Defendants are entitled to qualified official immunity on these claims. Thus, Plaintiff's state-law negligence and gross

negligence claims against Officer Hicks and Sergeant Eastman in their individual capacities will be dismissed and summary judgment shall be GRANTED to City Defendants.

### ii. KSP Trooper Carroll

Defendant KSP Trooper Carroll argues he is entitled to qualified official immunity on Plaintiff's state-law individual capacity claims because "Trooper Carroll's actions were reasonable under the circumstances and did not violate any clearly established law." [DN 37 at 326]. The Court agrees. As previously discussed, Troper Carroll disputes Plaintiff's factual allegations that he found Plaintiff hiding in a surrendering position and held the hatch open while K9 Kuno attacked Plaintiff. Trooper Carroll asserts that his involvement in Plaintiff's arrest was limited to placing Plaintiff in handcuffs after he was found and apprehended by HPD officers and then assisting him in exiting the boat and walking out of the building. [DN 42-1]. It cannot be determined with absolute certainty from the body camera footage, that Trooper Carroll was not in the area around the boat when Plaintiff was arrested. Thus, there is a possibility that Trooper Carroll was present, but the video failed to show him. Regardless, even taking Plaintiff's factual allegations against Trooper Carroll as true, it is insufficient to deprive Trooper Carroll of qualified official immunity. The facts, as alleged by Plaintiff, still show that Trooper Carroll's actions were performed within the scope of his discretionary authority as a state police officer, and this Court has already found that evidence establishes that Trooper Carroll's actions were objectively reasonable. Plaintiff has failed to allege any facts or present any evidence suggesting that Trooper Carroll caused Plaintiff any harm or that he willfully or maliciously intended to harm Plaintiff or acted with a corrupt motive.

Without having demonstrated the violation of an established right which a person in Defendant's position "presumptively would have known was afforded to a person in the plaintiff's

position" or showing that "the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive," Plaintiff cannot overcome the qualified official immunity defense. *Yanero*, 65 S.W.3d at 523. Consequently, the Court finds that Defendant KSP Trooper Carroll is entitled to qualified official immunity on Plaintiff's state-law negligence and gross negligence claims asserted against him in his individual capacity. Therefore, these claims will be dismissed, and summary judgment shall be GRANTED to Defendant Carroll.

### B. Official Capacity

#### i. City Defendants – City of Hopkinsville

Plaintiff brings state-law official capacity claims for negligence and gross negligence against Officer Hicks, Sergeant Eastman, and the Hopkinsville Police Department Canine Team. [DN 1-1]. Since the Hopkinsville Police Department is a division of the city government, this Court construed Plaintiff's claims against the department as though they were brought against the City of Hopkinsville. [DN 17]. Moreover, an action against a city official or employee in his official capacity is essentially an action against the city itself. When sued in their official capacity, officials are "cloaked with the same immunity as the government or agency he/she represents." *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero*, 65 S.W.3d at 522). Thus, the Court's determination as to the City of Hopkinsville's sovereign immunity will apply to the Defendant Officers sued in their official capacities as well. *Funke v. Coogle*, No. 3:11-CV-310-H, 2013 WL 209602, at *6 (W.D. Ky. Jan. 17, 2013) (citing *Wilkerson v. City of Frankfort, Ky.*, 2009 WL 1033828, at *10 (E.D.Ky. Apr. 16, 2009)). The Court notes that City Defendants did not address the issue of municipal liability for the state-law tort claims brought against the City itself or against Hicks and Eastman in their official capacities. [DN 35-1]. However, City Defendants did address the merits of Plaintiff's state-law claims. [*Id.* at 260]. Nonetheless, the

Court finds it important to briefly address the issue of municipal liability for state-law official capacity claims.

Under Kentucky law, municipalities are not afforded the same degree of immunity from tort liability as county governments. *Schwindel v. Meade County*, 113 S.W.3d 159, 165 (Ky.2003). Specifically, "municipal immunity from liability for 'ordinary torts' exists only in situations involving 'the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions.'" *Ashby v. City of Louisville*, 841 S.W.2d 184, 186 (Ky. Ct. App. 1992) (quoting *Haney v. Lexington*, 386 S.W.2d 738, 742 (Ky.1964) (abolishing municipal immunity "for ordinary torts")). The municipality "can otherwise be held vicariously liable for the torts of its employees." *Schwindel*, at 165 (quoting *Haney*, at 742). The Claims Against Local Governments Act codifies "[t]his judicially recognized exception to the rule of municipal tort liability." *Ashby,* at 186 (citing Ky. Rev. Stat. Ann. § 65.2001). And as other courts have found, the exercise of police functions is not a legislative, quasi-legislative, judicial, or quasi-judicial function. *See Virgil v. City of Newport*, No. CV 16-224-DLB-CJS, 2018 WL 344986, at *17 (E.D. Ky. Jan. 9, 2018), *aff'd*, 745 F. App'x 618 (6th Cir. 2018); *Day v. City of Henderson*, No. 2012-CA-2157-MR, 2014 WL 1882286, *4 (Ky. Ct. App. May 9. 2014); *see also Smith v. City of Corbin*, No. 11-cv-99-GFVT, 2013 WL 139726, *16 (E.D. Ky. Jan. 10, 2013); *Perkins v. City of Williamsburg*, No. 09-cv-170-GFVT, 2012 WL 12924562, *16 (E.D. Ky. Mar. 30, 2012). Therefore, the City of Hopkinsville can be held vicariously liable for torts committed by Defendant Officers. In addition, since the City of Hopkinsville does not have municipal immunity in this situation, there is also no immunity against state claims asserted against Defendants Hicks and Eastman in their official capacities. *See Wilkerson v. City of Frankfort, Ky.*, No. CIV.A. 3:08-12-DCR, 2009 WL 1033828, at *10 (E.D. Ky. Apr. 16, 2009). The court in *Wilkerson* noted that this is a marked contrast from the treatment

of state and county agencies and their employees under Kentucky law. *Id*; *See, e.g., Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001).

Here, even though Plaintiff's state-law negligence claims against the City of Hopkinsville and HPD Officer Hickman and HPD Sergeant Eastman are not barred by state sovereign immunity, the Court finds Plaintiff has failed to establish any factual dispute that would preclude summary judgment on these claims. Under Kentucky law, to sustain a negligence claim, a plaintiff must prove that: "(1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the standard by which his or her duty is measured; and (3) consequent injury." *Estep v. Combs*, 366 F.Supp.3d 863, 865 (E.D. Ky. 2018) (quoting *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)). "Consequent injury" consists of two distinct elements: actual injury or harm to the plaintiff and legal causation between the defendant's breach and the plaintiff's injury. *Id.* "Duty, the first element, presents a question of law. Breach and injury are questions of fact for the jury to decide. The last element, legal causation, presents a mixed question of law and fact." *Id.* (citations omitted). "The standard of care applicable to a common-law negligence action is that of ordinary care—that is, such care as a reasonably prudent person would exercise under the circumstances." *Id.* An absence of any of these elements leads to the failure of the claim. *See Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky.1967).

A Kentucky (common law) gross negligence claim has two elements: (1) "a finding of failure to exercise reasonable care; and (2) an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety, or property of others."[5] *Estep*, 366 F.Supp.3d at 885–86 (quoting *Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56, 59 (Ky. 2013)).

---

[5] Kentucky courts have also described gross negligence as "something more than the failure to exercise slight care. We have stated that there must be an element either of malice or willfulness or such an utter and wanton disregard of

After reviewing the sparse factual allegations in Plaintiff's Complaint, and viewing the evidence presented in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to plead facts or provide evidence sufficient to establish any genuine factual dispute as to whether City Defendants breached the duty of reasonable care owed to Plaintiff, causing actual harm. Moreover, Plaintiff has not alleged facts or presented evidence showing that City Defendants failed to exercise reasonable care during is arrest. Even if Defendants did fail to exercise reasonable care, there is no evidence that Defendants consciously disregarded any significant risk to Plaintiff that may have resulted from his dog bite wounds. Affirmative evidence shows that Defendants promptly transported Plaintiff to the emergency room and did not disregard his injuries. Plaintiff's claims also fail because he did not clarify his negligence or gross negligence claims by specifically identifying any statutory or other duty the defendants allegedly breached. Nor did Plaintiff elaborate on the precise nature of his negligence claims. Accordingly, the Court finds that Plaintiff has not alleged sufficient facts or presented any evidence to show that City Defendants actions amounted to negligence or gross negligence. Therefore, City Defendants are entitled to summary judgment on Plaintiff's state-law official capacity claims.

### ii. Defendants KSP Trooper Carroll and the Kentucky State Police

In addition to asserting federal claims under 42 U.S.C. § 1983 for alleged excessive force and deliberate indifference, Plaintiff has asserted state-law claims against KSP Defendants for negligence and gross negligence. To the extent that these state-law claims have been asserted against Defendant KSP Trooper Carroll in his official capacity, he has moved the Court to dismiss them arguing that they are barred by official/governmental immunity. [DN 37 at 331]. Defendants

---

the rights of others as from which it may be assumed the act was malicious or willful." *City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001) (internal citation omitted).

also argue that the Kentucky State Police are entitled to sovereign immunity on Plaintiff's state-law claims. *Id.* The Court finds that the KSP and KSP Trooper Carroll are entitled to immunity on Plaintiff's state-law claims.

Under Kentucky law, agencies of the state possess governmental immunity from suit when an action is premised on the agency's performance of a governmental (as opposed to a proprietary) function. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky.2001) (noting that governmental immunity and sovereign immunity are used interchangeably by Kentucky courts). The KSP is tasked with enforcement of the law, a governmental function, and is, thus, entitled to immunity. *See Gaither v. Justice & Pub. Safety Cabinet*, 447 S.W.3d 628, 633 (Ky. 2014); *see also Allen v. Booth*, No. CIV.A. 08-135, 2008 WL 4829875, at *2 (E.D. Ky. Nov. 5, 2008). Here, there is no dispute that the law enforcement functions of the KSP and its employees are governmental—not proprietary. Moreover, under Kentucky law, governmental immunity extends to employees acting and sued in their official capacities. *Yanero*, at 521–22; *Autry v. Western Kentucky Univ.*, 219 S.W.3d 713, 717 (Ky. 2007) ("If a state agency is deemed to have governmental immunity, its officers or employees have official immunity when they are sued in their official or representative capacity."). When an officer or employee of a governmental agency is sued in his representative (*i.e.,* official) capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. *See Yanero*, at 521–22. It is also undisputed that KSP Trooper Carroll is currently a Detective employed by the KSP, and he was a KSP officer the time of Plaintiff's arrest, and therefore he is employed by the Department of Kentucky State Police. As such, he is an officer of the state, and when he is sued in his "official capacity," he is afforded the same immunity as the Department of KSP. Accordingly, the KSP is entitled to immunity from Plaintiff's state-law claims and this immunity extends to KSP Trooper Carroll. Therefore,

Plaintiff's state-law official capacity claims against the KSP and KSP Trooper Carroll shall be dismissed and summary judgment shall be granted for Defendants on these claims.

## CONCLUSION

For the reasons stated, City Defendant's Motion for Summary Judgment, [DN 35], is **GRANTED**, Defendants KSP and KSP Trooper Carroll's Motion for Summary Judgment, [DN 37], is **GRANTED**, and Defendants KSP and Trooper Carroll's Motion for Extension of Time to File, [DN 34], is **DENIED AS MOOT**. The Court will enter a separate Order and Judgment contemporaneous with this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 30, 2021

CC: Counsel of Record

**Alan Young**
135 West Mill Street, Apt. 311
Crofton, KY 42217
PRO SE